## J. P. KILGORE v. STATE.

No. A-1837.   Opinion Filed January 10, 1914.

(137 Pac. 364.)

1.    TRIAL—Exclusion of Witnesses. Where the court orders witnesses to be sworn and excluded from the courtroom during the taking of testimony, and when the order of the court is willfully violated, it is a matter within the discretion of the court to allow or exclude the testimony of such witness.

2.    APPEAL—Modification of Judgment. Under section 6003, Rev. Laws 1910, this court has the power, in the furtherance of justice, to modify any judgment appealed from by reducing the sentence.

*Appeal from District Court, McCurtain County;*
*A. H. Ferguson, Judge.*

J. P. Kilgore was convicted of aggravated assault, and appeals. Modified and affirmed.

*N. W. Gore,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is prosecuted from a judgment of conviction rendered on the 27th day of February, 1912, in

which the defendant was found guilty of aggravated assault, and his punishment assessed at imprisonment in the penitentiary for a period of one year.

The evidence shows that the defendant, J. P. Kilgore, and the prosecuting witness, John Bullard, were both tenants of one Dr. Deberry, on land near Shawneetown, in McCurtain county. It appears that during the crop season of 1911, both of these tenants had raised some cane, and Bullard was a manufacturer of a sorghum molasses which he put up in one gallon buckets, branded, "Bullard's Famous Ribbon-Cane Syrup." The demand for his syrup was such that he could not supply it, and he arranged with Dr. Deberry to purchase a quantity of molasses that was due as rent from the defendant. The delivery of this molasses was made on the day of this difficulty. Dr. Deberry went to the defendant's house and agreed with the defendant as to the amount of sorghum due to him. Bullard went to the defendant's house to get the sorghum, which was on the porch of the defendant's house; he drove his wagon along the side of the porch, and while they were loading the sorghum cans into his wagon, he asserted that the defendant was defrauding Dr. Deberry out of part of his rent. Dr. Deberry had settled on 65 cans for his share. Bullard claimed that he should receive 71 cans. The prosecuting witness testified that the defendant then said, "You have been meddling with me and my business all the year," and struck him with a knife, and that the defendant's wife and daughter cried out: "Don't do that! Don't do that, pa!"

The defendant, as a witness in his own behalf, testified that he was 71 years of age; that he "growed" a patch of cane on a piece of Johnson grass land, and hauled the cane to "Bullard's to make it up, and asked him to allow Dr. Deberry's share to remain at the sorghum mill," but Bullard would not permit it, so he hauled the sorghum home, and set it on the porch of his house, and he told Dr. Deberry that it was there for him; that on the day of the difficulty he hitched up his team and was ready to go to the gin with cotton, and Bullard came along and said he

wanted Dr. Deberry's sorghum, and he told him it was on the porch, to go and get it, and Bullard said he was not going to have anything to do with it unless he went with him; that when they had loaded 65 buckets, Bullard claimed that the rent was 71 buckets, and said, "Where is that fifteen buckets of molasses that I let you have?" and defendant told him, "You gave me that fifteen buckets for a piece of cane;" that his wife and daughter were present, and Bullard called him a liar, and that, "He got me in a little bit of a rage, and I guess I done what I ought not to have done."

Malinda Kilgore, daughter of the defendant, called as a witness for him, was not permitted to testify in his behalf. The county attorney objected, because she was present in the courtroom and heard the testimony of the witnesses on the part of the state, in violation of the order of the court.

Several assignments of error are made here, and relied upon for a reversal of the judgment. However, in view of the fact that the defendant by his testimony admitted the facts necessary to a conviction, we are not prepared to say that the rulings of the court upon which the errors assigned are based constitute reversible error.

It is the practice of courts, whenever requested, to have all the witnesses, both for the state and the defendant, called and sworn, and then instructed to retire beyond the limits of the courtroom, and there remain, without communication with any one as to what may have been testified to in the trial, until they are called to testify. And where the order of the court is willfully violated, it is a matter within the discretion of the court to allow or exclude the testimony of such witnesses.

The court instructed the jury in part as follows: "That no opprobrious epithets or abusive words would justify an assault by one person upon another." And, further, that: "The fact that the defendant was in a state of anger at the time would be no justification." But the court did not instruct the jury that abusive language, used in the defendant's own house in the presence of his family, constituted a trespass, and that the de-

fendant had a legal right to expel the prosecuting witness from his premises as a trespasser, if necessary, by the use of any reasonable force short of endangering life or bodily harm.

No exceptions were taken to the instructions given and no instructions were requested by the defendant. However, in view of the fact that the question of punishment was submitted to the jury, we think the court should have instructed the jury as to the defendant's rights in the premises under this theory of the case. The testimony in the case shows that the defendant was an old man, having passed the allotted three score and ten, and had lived an exemplary life; that he was an old Confederate soldier, having served four years in the Confederate Army, in the Eighth Texas Regiment, Morgan's Division, and was a man who doted upon his honor and was peculiarly sensitive in respect of the use by another of language reflecting on his honor and integrity. It is apparent that the assault was made in sudden anger and passion, but the provocation was not sufficient to justify the defendant's assault with a dangerous or deadly weapon. However, our examination of the record in this case convinces us that the sentence pronounced against the defendant is too severe, and we do not think the vindication of public justice requires that this old man be imprisoned in the penitentiary. This court is not confined to the mere alternative of affirming or reversing a judgment of conviction. Under section 6003, Rev. Laws 1910, this court has the power in furtherance of justice to modify any judgment appealed from by reducing the sentence. For the reasons stated, we have concluded to modify the sentence to the extent of reducing it to confinement in the county jail of McCurtain county, for the period of 30 days, and, thus modified, the judgment will be affirmed.

ARMSTRONG, P. J. and FURMAN, J. concur.