(April 5, 1916.)

FOSTER CRANE, Appellant, v. MORTON REALTY CO.,
a Corporation, THE BUCKEYE RANCH CO., LTD.,
a Corporation, Respondents, and MORRIS & JULIEN,
Intervenors and Appellants.

[157 Pac. 249.]

MORTGAGE—FORECLOSURE OF—PROMISSORY NOTES—PAYMENT OF—FIND-
ING OF FACTS—SUFFICIENCY OF EVIDENCE.

    1. *Held,* that the findings of fact are supported by the evidence
and the judgment must be affirmed.

    [As to intervention in foreclosure proceedings, see note in
Ann. Cas. 1913D, 1040.]

APPEAL from the District Court of the Fourth Judicial
District for Gooding County. Hon. James R. Bothwell,
Judge.

Action to foreclose a mortgage on real estate. Judgment
for defendants. *Affirmed.*

John F. MacLane and Richards & Haga, for Appellants.

The assignments, whether accompanied by delivery of the
notes or not, were sufficient to pass all title to the notes to
Crane, as against the assignors, and any person having ac-
tual knowledge of the assignment. The assignment is not an
indorsement or technical negotiation of the note, but is good
between the parties, and is effective to put the assignee in
the shoes of the assignor. (*Planters & Merchants' Ins. Co.
v. Tunstall,* 72 Ala. 142, 148; *Baldwin v. Reynolds,* 189 Fed.
852, 111 C. C. A. 114; *Hull v. Planters & Merchants' Bank,*
6 Ala. 761; Ogden on Negotiable Instruments, sec. 114; *Gross
v. Bennington,* 52 Wash. 417, 100 Pac. 846; *Osgood's Admrs.
v. Artt,* 17 Fed. 575; *Central Trust Co. v. First Nat. Bank,*
101 U. S. 68, 25 L. ed. 876.)

The Morton Realty Co. was put upon notice and charged
with knowledge of the assignment of the notes in question

to Crane, and could not discharge its obligation upon the notes by payment to, or an agreement to pay, anyone else but him. (3 Page on Contracts, sec. 1275, p. 1961; *Works v. Merritt,* 105 Cal. 467, 38 Pac. 1109; *McCarthy v. Mt. Tecarte Land & Water Co.,* 110 Cal. 687, 43 Pac. 391.)

Morton was the president of the company, in full charge of its affairs, and notice of the assignment to him was notice to the company. (10 Cyc. 1054, 1059.)

Where paper negotiable in form is given, the maker is required, in the exercise of due diligence and ordinary business caution, to require the production of the paper or its formal cancelation at the time of payment, and failing in so doing, he makes payment to the wrong person at his peril. (*Assets Realization Co. v. Clark,* 205 N. Y. 105, 98 N. E. 457, 41 L. R. A., N. S., 462; *Murphy v. Barnard,* 162 Mass. 72, 44 Am. St. 340, 38 N. E. 29; *Woodward v. Brown,* 119 Cal. 283, 63 Am. St. 108, 51 Pac. 2, 542; *Dodge v. Birkenfeld,* 20 Mont. 115, 49 Pac. 590.)

W. G. Bissell and J. G. Watts, for Respondents.

"A verdict upon substantially conflicting evidence will not be disturbed." (*Ainslie v. Idaho World Printing Co.,* 1 Ida. 641; *O'Connor v. Langdon,* 3 Ida. 61, 26 Pac. 659; *Watson v. Molden,* 10 Ida. 570, 79 Pac. 503; *Coe v. McGran,* 23 Ida. 582, 131 Pac. 1110; *Davidson Grocery Co. v. Johnston,* 24 Ida. 336, Ann. Cas. 1915C, 1129, 133 Pac. 929.)

"Findings of fact by the court, and judgment thereon, based upon evidence substantially conflicting, will not be disturbed on appeal." (*Sabin v. Burke,* 4 Ida. 28, 37 Pac. 352; *Spaulding v. Coeur d'Alene Ry. etc. Co.,* 5 Ida. 528, 51 Pac. 408; *Heckman v. Espey,* 12 Ida. 755, 88 Pac. 80; *Salisbury v. Spofford,* 22 Ida. 393, 126 Pac. 400; *Miller v. Blunck,* 24 Ida. 234, 133 Pac. 383.)

"The rule that the supreme court will not reverse a judgment where there is a substantial conflict in the evidence applies to equity cases heard on oral testimony." (*Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719; *Later v. Haywood,* 15 Ida.

716, 99 Pac. 828; *Weeter Lumber Co. v. Fales,* 20 Ida. 255, Ann. Cas. 1913A, 403, 118 Pac. 289.)

It is conceded that between the Morton Realty Co. and the Buckeye Ranch Co. the notes herein sued upon are paid. It necessarily follows that if the plaintiff has any right to enforce and collect the same, the right must be predicated upon the theory that he was and is an innocent purchaser of the same for value before maturity, and is protected in his rights by the law-merchant.

In order to be a holder in due course, he must take it in the usual course of business. (*Wilson v. Metropolitan Electric R. Co.,* 120 N. Y. 145, 17 Am. St. 625, 24 N. E. 384; *Rochester & Turn Pike Road Co. v. Paviour,* 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790; *Kipp v. Smith,* 137 Wis. 234, 118 N. W. 848.)

"One who takes negotiable paper of a corporation in payment of or as security for the individual debts of its officers is not a *bona fide* holder thereof." (*West St. Louis Sav. Bank v. Shawnee etc. Bank,* 95 U. S. 557, 24 L. ed. 490; *McLellan v. Detroit File Works,* 56 Mich. 579, 583, 23 N. W. 321; *Wilson v. Metropolitan Electric R. Co., supra; Jenkins v. Planters & Mechanics' Bank,* 34 Okl. 607, 126 Pac. 757.) There being no debt due from Morton to the intervenors, no action could be by them maintained on the collateral. (*Herrmann v. Central Car Trust Co.,* 101 Fed. 41, 41 C. C. A. 176; *Latta v. Tutton,* 122 Cal. 279, 68 Am. St. 30, 54 Pac. 844; *G. Ober & Sons Co. v. Drane,* 106 Ga. 406, 32 S. E. 371; *Bowditch v. Green,* 44 Mass. (3 Met.) 360.)

SULLIVAN, C. J.—This action was brought by the plaintiff, who is one of the appellants here, to foreclose a mortgage securing a series of twenty promissory notes, executed by the Morton Realty Company, a corporation, to the Buckeye Ranch Company, a corporation, six of which promissory notes in the amount of $2,500 each the plaintiff alleged had been assigned to him. The remaining fourteen promissory notes he alleges have been paid.

The defendant Morton Realty Company answered, admitting the making of the notes, but averred that prior to the time of the delivery of the notes sued on the same had been by the Morton Realty Company paid and discharged, and further alleged facts showing that the plaintiff was not an innocent purchaser for value of the six promissory notes; that the notes in question were the property of the Buckeye Ranch Company and were on their face payable to said company; that one W. L. Coltharp was president and one P. E. Dusault was the secretary of said Buckeye Ranch Company; that as such president and secretary they assigned three of said promissory notes to said Coltharp as an individual, and three to said Dusault as an individual, who in turn assigned them as collateral security to the plaintiff to secure the individual debts of said Coltharp and Dusault, said debts being evidenced by the individual notes of Coltharp and Dusault in the sum of $6,650 each.

M. J. Morris and J. G. Julien, a copartnership doing business under the firm name and style of Morris & Julien, were permitted to intervene, and filed their complaint in intervention and claimed by assignment three other notes of said series of twenty, which they alleged had likewise never been paid, and prayed for judgment for the sum of $7,500 principal, together with interest, and also attorneys' fees, against said Morton Realty Company and the Buckeye Ranch Company, and also prayed for a foreclosure of said mortgage as to said three notes.

The plaintiff, Crane, answered said complaint in intervention, denying the material allegations thereof, and prayed that the complaint in intervention be dismissed and that the intervenors take nothing by their action.

Upon the issues thus made the cause was tried by the court with a jury, and the jury returned an advisory verdict by answering certain special interrogatories submitted to it. The court adopted the findings of the jury, made additional findings, drew conclusions of law therefrom and entered a decree in favor of the respondents, the Morton Realty Com-

pany and the Buckeye Ranch Company, and against the plaintiff and the intervenors, who are appellants here.

The appeal is from the judgment.

The following facts, among others, appear from the record: The Buckeye Ranch Company was incorporated August 13, 1908, with a capital of $21,000, the stockholders being P. E. Dusault, W. L. Coltharp and Charles Dilatush. However, one J. E. Clinton had a secret undivided one-half interest in Dusault's stock. The defendant Morton Realty Company was incorporated March 17, 1909, with a capital of $200,000 by John W. Morton, Frank R. Gooding and P. E. Dusault. On March 11, 1909, the Buckeye Ranch Company contracted to sell the premises in controversy to John W. Morton for $100,000. That agreement was assigned to the Morton Realty Company on March 9, 1911. The Buckeye Ranch Company sold the property in question to the Morton Realty Company for $100,000, $50,000 of which was to be paid in cash and twenty notes, each for $2,500, and a mortgage for $50,000 was given on the property to secure the payment of said notes, that being the mortgage sought to be foreclosed in this action.

On January 23, 1912, the directors of the Buckeye Ranch Company by resolution directed the secretary to sell the notes and mortgage in question and to distribute the proceeds of the sale. The sale, however, was never made. In June, 1912, said Coltharp and Dusault were each indebted to the plaintiff Crane in the sum of $6,650, and to evidence such debts, some time in June (the exact date cannot be obtained from the evidence), they executed their notes, post-dated as of July 1, 1912, in that amount, and at the same time executed an assignment in writing as president and secretary of the Buckeye Ranch Company, to themselves respectively as individuals, of three notes of the Morton Realty Company, which they, as individuals, in turn assigned in writing to the plaintiff. Said notes were not transferred by indorsement thereon, but by a separate instrument in writing, and it appears, we think, sufficiently from the record that the promissory notes were not delivered at that time.

The record shows that on June 27, 1912, said Dilatush and Coltharp took the full series of said twenty notes to the office of W. G. Bissell, an attorney at law, for the purpose of having said mortgage foreclosed. Thereafter, on July 3d, a settlement was made between the Morton Realty Company and the Buckeye Ranch Company, whereby all of said notes were paid, and it was agreed that the mortgage should be discharged and released of record. However, it is contended that said settlement of July 3d in no manner affected the rights of the plaintiff to proceed and foreclose said mortgage to enforce payment of the promissory notes assigned to him.

Numerous errors are assigned which were no doubt framed to meet the repeated statements of the same fact or proposition of the law affirmed by the verdict, findings and conclusions. It is contended by counsel for appellants that the ultimate questions raised by the assignments of error are few and simple of statement; that since the jury had found in favor of plaintiff and intervenors on the issue of the assignment of said promissory notes and the court having adopted the verdict as its findings, the only remaining question is that of the payment of said notes. It is also contended by counsel that it must be conceded that said promissory notes have never been "paid" according to their tenor or in their ordinary sense, and that the most that is claimed to have occurred was a substitution of securities—certain shares of the capital stock of the Morton Realty Company for said notes—and counsel contends that it required a new agreement by all the parties affected by such substitution. Six of said notes had been assigned to the plaintiff Crane on June 17th, but there is a conflict in the evidence as to the delivery of the notes on that date. Three of said notes were assigned to the intervenors, Morris & Julien.

The court found as a fact that it was not intended that said assignment should be of force or effect until the actual delivery of said promissory notes sued on, and that said notes were actually paid by the Morton Realty Company on July 3, 1912, and that on that date said notes were in the possession of the attorney of the Buckeye Ranch Company for

the purpose of instituting a foreclosure suit for the collection of the same, and that said notes were not actually delivered to the plaintiff or his agent until some time after July 3, 1912, and that at the time plaintiff secured possession of said notes the same had actually been paid; that at all times since the issuance of stock in the Morton Realty Company, Dusault and Coltharp are and have been willing to substitute the stock received by them, and each of them, for such notes.

Counsel for appellant concedes that the only questions in this case are, first: Is there any evidence of an agreement to substitute the stock of the Morton Realty Company in payment of said notes? And, second: If so, has the agreement ever been executed so as to effect a discharge of the notes? Counsel admits that these are the only two questions in the case, and that if either of them is answered in the negative the judgment ought to be reversed.

The court made findings of fact to the following effect: That it was not intended that the assignment of said promissory notes to the plaintiff should be of force and effect until the actual delivery of said notes; that said notes were actually paid by the defendant, the Morton Realty Company, on July 3, 1912; that on said date the notes were in the possession of the attorney for the Buckeye Ranch Company for the purpose of instituting foreclosure proceedings; that said notes were not actually delivered to the plaintiff or his agent until some time after July 3, 1912, and that at the time plaintiff secured possession of said notes the same had actually been paid.

We think the evidence is amply sufficient to support said findings. That being true, both of said questions above propounded must be answered in the affirmative.

The evidence being amply sufficient to support the findings of the court, the judgment must necessarily be affirmed, and it is so ordered, with costs in favor of respondents.

Budge and Morgan, JJ., concur.

Petition for rehearing denied.