(December 20, 1921.)

STATE, Respondent, v. VICENTE RAMIREZ, Appellant.

[203 Pac. 279.]

JUDGMENT IN SUPREME COURT IN CRIMINAL CASE—REMITTITUR—RE-
TENTION OF JURISDICTION—MODIFICATION OF JUDGMENT AFTER RE-
MITTITUR—ALTERNATIVE PENALTY UNDER C. S., SEC. 8212—JU-
DICIAL ACT OF JURY.

1. When a judgment has been rendered by the appellate court
in a criminal case under a mistake of fact or in consequence of
not being properly presented by counsel on appeal, the court may
in furtherance of justice modify such judgment at any time dur-
ing the term at which it was rendered.

2. When it is clearly made to appear to the appellate court
after the going down of the *remittitur* in a criminal case and
before the sentence of conviction has been carried into effect, that
considerations of justice warrant a modification of its judgment,
it may order the *remittitur* recalled and thereupon modify the
judgment of the lower court under the provisions of C. S., sec.
6446.

3. The action of a jury in imposing the death penalty under
the provisions of C. S., sec. 8212, becomes merged in the judg-
ment of the lower court, which under the provisions of C. S., sec.
6446, the appellate court has power to modify.

4. The decision of the jury as to which alternative penalty
shall be imposed for the crime of murder in the first degree, under
the provisions of C. S., sec. 8212, is a judicial act, requiring the
exercise of judicial power, and the legislature is without authority
to clothe the jury with the exclusive power to fix the extent of
the punishment under this section, regardless of the jurisdiction of
the appellate court to review any decision of the district court
under art. 5, sec. 9, of the constitution.

5. In all cases triable by a jury the court is made up of the
judge and jury, and the two combined constitute the court. The
final decision resulting in such cases is the decision of the court,
and as such is subject to review by the appellate court under the
constitution and laws of the state.

6. Where in the trial of a criminal case error has been com-
mitted which, though not distinctly prejudicial to the defendant
or such as would warrant a reversal of the case, has nevertheless,
in connection with other facts and circumstances, been instrumental

in excessive punishment being inflicted upon the defendant, such judgment may properly be modified by the appellate court under the provisions of C. S., sec. 9086.

7. *Held*, that the evidence in this case as shown by the record on appeal is not sufficient to warrant the imposition of the extreme penalty of the law.

APPEAL from the District Court of the Ninth Judicial District, for Madison County. Hon. James G. Gwinn, Judge.

Judgment of conviction of murder in the first degree, and sentence to death. Modified to sentence of imprisonment for life.

Barber & Barber and J. B. Eldridge, for Appellant.

The right is inherent in the judiciary to decide upon its rules and procedure, in order to the furtherance of justice, and pursuant thereto it is competent for it to decide whether it will resume jurisdiction, if need be. (*United States v. Aakervik*, 180 Fed. 137, 146; *Franklin Bank Note Co. v. Mackey*, 158 N. Y. 683, 51 N. E. 178.)

"The supreme court has power during the term, when it discovers an error, to inquire whether its mandate has been acted upon, and if it has not, to resume jurisdiction." (*McBride v. Coleman* (Ind.), 125 N. E. 449; *Miocene Ditch Co. v. Campion Mining etc. Co.*, 197 Fed. 497, 177 C. C. A. 61; *Waskey v. Hammer*, 179 Fed. 273, 102 C. C. A. 629; *Reynolds v. Manhattan Trust Co.*, 109 Fed. 97, 48 C. C. A. 249; *Bank of United States v. Moss*, 6 How. (U. S.) 31, 12 L. ed. 331.)

The *remittitur*, having been based upon a false legal premise, will be recalled and the judgment modified. (*Port Angeles Pac. R. Co. v. Cooke*, 38 Wash. 184, 80 Pac. 305; *Grimes v. Barndollar*, 58 Colo. 421, 148 Pac. 256; *Ehrig v. Adams* (Okl.), 169 Pac. 645; *Ex parte Gallagher*, 101 Cal. 113, 35 Pac. 449; *People v. Coronado*, 144 Cal. 207, 79 Pac. 418.)

"Even after the jury say that the defendant should suffer death, this court, in furtherance of justice, has the power to modify the judgment to imprisonment for life." (*Fritz v. State*, 8 Okl. Cr. 342, 128 Pac. 170; *Chambers v. State*, 16 Okl. Cr. 238, 182 Pac. 714; *Williams v. State*, 10 Okl. Cr. 336, 136 Pac. 599; *United States v. Wynn*, 11 Fed. 57; *Jones v. State*, 10 Okl. Cr. 216, 136 Pac. 182, 137 Pac. 121; *Kilgore v. State*, 10 Okl. Cr. 446, 137 Pac. 364; *Owen v. State*, 13 Okl. Cr. 195, 163 Pac. 548; *Robinson v. State*, 13 Okl. Cr. 466, 165 Pac. 616; *Brewer v. State*, 13 Okl. Cr. 514, 165 Pac. 634; *McConnell v. State* (Okl. Cr.), 197 Pac. 521.)

Where the errors complained of, though not so material as to necessitate a reversal and new trial, were obviously prejudicial and might have aggravated the punishment, it is incumbent upon the court, in order to the administration of justice, to modify the sentence. (*Fletcher v. State*, 13 Okl. Cr. 563, 165 Pac. 907; *Reed v. State* (Okl. Cr.), 191 Pac. 1041; *Pittman v. State*, 84 Ark. 292, 105 S. W. 874; *Brown v. State*, 34 Ark. 232; *Jones v. State*, 88 Ark. 579, 115 S. W. 166; *Warren v. State*, 88 Ark. 322, 114 S. W. 705; *State v. Neil*, 13 Ida. 539, 90 Pac. 860, 91 Pac. 318; *State v. Harness*, 11 Ida. 122, 80 Pac. 1129; *State v. O'Callaghan*, 2 Ida. 156, 9 Pac. 414.)

"There exists in every court . . . . an inherent power to see that a man's fundamental rights are protected in every case." (*State v. Blank*, 33 Ida. 730, 197 Pac. 821.)

Roy L. Black, Attorney General, Dean Driscoll and James L. Boone, Assistants, for Respondent.

The appellate jurisdiction of the supreme court in criminal actions ends when the *remittitur* is sent down to the clerk of the court from which the appeal is taken. (Secs. 9089–9091, C. S.; *People v. Walters*, 1 Ida. 274; *State v. Neil* (on rehearing), 13 Ida. 554, 90 Pac. 860, 91 Pac. 318; Rule 59, Rules of Supreme Court; *People v. Dick*, 39 Cal. 102; *People v. McDermott*, 97 Cal. 247, 32 Pac. 7; *People*

*v. Sprague,* 57 Cal. 147; *State v. Sund,* 25 N. D. 59, 140 N. W. 716.)

When the jury exercises statutory discretion and fixes the punishment in a case of murder in the first degree, its decision is conclusive upon the trial court. (*Owen v. State,* 13 Okl. Cr. 195, 163 Pac. 548; *Wilson v. State* (Okl. Cr.), 183 Pac. 613; *People v. Bawden,* 90 Cal. 195, 27 Pac. 204; *People v. Kamaunu,* 110 Cal. 609, 42 Pac. 1090.)

The decision is conclusive upon the appellate court. (*People v. Leary,* 105 Cal. 486, 39 Pac. 24.)

Where power is lacking in the trial court to modify the judgment, then such power or jurisdiction is lacking in the court to which the appeal is taken. (3 C. J. 123, p. 366.)

Should the court have power to modify the punishment assessed by a jury, this power will be exercised only when error is made to appear. (*State v. Ricks and Levine, ante,* p. 122, 201 Pac. 827, *State v. Williams and Arnold, ante,* p. 144, 201 Pac. 834.)

BUDGE, J.—Appellant was convicted of murder in the first degree, and his punishment was fixed by the jury at death. The judgment was affirmed by this court on May 25, 1921, and a petition for rehearing denied. (*State v. Ramirez,* 33 Ida. 803, 199 Pac. 376.) The *remittitur* was forwarded to the clerk of the trial court on July 28, 1921, and filed in said court on July 29, 1921.

A motion was filed in this court by appellant's counsel on October 11, 1921, for an order recalling the *remittitur,* the restoration of the cause to the calendar, and permission to amend the petition for rehearing or file a supplemental petition. In support of the motion, it is alleged that counsel failed to fully brief and argue the question of the power of this court to modify the judgment by reducing the penalty to life imprisonment, and that this court was led into error by reason of a suggestion that it was without such power.

Two questions are presented by the motion: First, the power of this court to recall its *remittitur;* and, second, the power of the court to modify the judgment in this case.

(1) With respect to the power of an appellate court to recall its *remittitur* the general rule is that the jurisdiction of such court over a case ceases when the case has been determined and remanded to the lower court.

"After a case has been fairly submitted to an appellate court, and the court has regularly determined the issues involved and caused its judgment in conformity with such determination to be entered, . . . . and the case is remanded to the lower court for such action as may be necessary, the jurisdiction of the appellate court terminates." (11 Ann. Cas. 865, note.)

This general rule of law is incorporated in our penal statutes as C. S., sec. 9091, in the following language: "After the certificate of the judgment has been remitted to the court below, the appellate court has no further jurisdiction of the appeal or of the proceedings thereon. . . . . "

The preponderance of judicial authority, while recognizing the rule of law above stated, concedes the power of an appellate court, at any time during the term at which a judgment is rendered, to set it aside when it was improvidently given, in consequence of a false suggestion or under a mistake of facts. (*Livesley v. Johnston,* 47 Or. 193, 82 Pac. 854.)

In *Marshall Field & Co. v. Nyman,* 285 Ill. 306, 120 N. E. 756, the supreme court of Illinois held: "There can be no question of the power to vacate judgments during term time in any court of record, and that this power is inherent in all courts of record, including not only *nisi prius* courts, but courts of appellate jurisdiction. (1 Black on Judgments, 2d ed., sec. 297; 23 Cyc. 890; 15 Ency. of Pl. & Pr. 205; 1 Freeman on Judgments, 4th ed., sec. 90.)"

In South Dakota it is held that the appellate court loses jurisdiction of a case when the *remittitur* has gone down, without fraud, accident or inadvertence. (*Dempsey v. Billinghurst,* 8 S. D. 86, 65 N. W. 427; *In re Seydel,* 14 S. D. 115, 84 N. W. 397.)

The present rule in New York is that the appellate court may determine whether it will resume jurisdiction for any purpose, and having decided to do so, it then requests the court below to return the *remittitur* so that reargument can be had or the *remittitur* amended. (*Franklin Bank Note Co. v. Mackey,* 158 N. Y. 684, 51 N. E. 178.) While in Oklahoma it is held that the general power of a court to reconsider its judgment and sentence, and to reverse, vacate or modify it at any time during the term in which it was rendered, or to increase or diminish the sentence which it has imposed, where the original sentence has not been executed or put into operation, is undeniable. This power is inherent in all courts of record. (*McConnell v. State* (Okl. Cr.), 197 Pac. 521; *State v. Young* (Okl. Cr.), 200 Pac. 260.)

In *Rowland v. Kreyenhagen,* 24 Cal. 52, the court states the general rule and the well-recognized exception thereto in the following language:

"It is apparent .... that, as a general rule, this court cannot exercise any jurisdiction over a cause in which the *remittitur* has been issued by its order and filed in the court below. The office of the *remittitur* is to return the proceedings which have been brought up by the appeal to the court below, and when the *remittitur* has been duly filed, the proceedings from that time are pending in that court, and not in this; and, in regard to them, it is not competent for this court to make any further order.

"But this general rule rests upon the supposition that all the proceedings have been regular, and that no fraud or imposition has been practiced upon the court or the opposite party; for if it appears that such has been the case, the appellate court will assert its jurisdiction and recall the case. Against an order or judgment improvidently granted, upon a false suggestion, or under a mistake as to the facts of the case, this court will afford relief after the adjournment of the term; and will, if necessary, recall a *remittitur* and stay proceedings in the court below. This is not done, however, upon the principle of resumption of jurisdiction,

but upon the ground that the jurisdiction of the court cannot be divested by any irregular or improvident order. In contemplation of law, an order obtained upon a false suggestion is not the order of the court, and may be treated as a nullity. If, under color of such an order, the proceedings have in part found their way back to the court below, yet in law they are considered as still pending in the appellate court, and that court may take such steps as may be necessary to make the fact and law agree.''

We are not unmindful of the fact that this court in the case of *People v. Walters,* 1 Ida. 274, held that after a criminal case had been certified back to the district court, the supreme court has no longer any jurisdiction over it, but all necessary orders must be made by the court to which it has been certified. This opinion, however, was handed down in 1869, twenty years before the adoption of the constitution of this state, and would have no direct application or binding effect when considered in the light of our present constitution.

Again, in the case of *State v. Neil,* 13 Ida. 539, at 554, 90 Pac. 860, 91 Pac. 318, this court states that the general rule is that the appellate court has no further jurisdiction after the judgment is entered and a certified copy thereof remitted to the trial court. The question presented here was not raised in that case, and the court, after stating the general rule, nevertheless considered the petition for rehearing as though the *remittitur* had been recalled.

As was said in *Post v. City of Spokane,* 28 Wash. 701, 69 Pac. 371, 1104, wherein it is held that judgments of the supreme court may be directly attacked after the *remittitur* is sent down: ''Upon satisfactory showing being made in this court, leave has been granted in some instances to attack judgments which have been affirmed here. We are not, however, aware of any published decision which shows such leave to have been granted. It is manifest that this court must reserve to itself the right to determine each particular case from the showing made, and no general rule can be announced as applicable to all cases. Certainly no

permission can be granted to disturb the judgments affirmed or entered by this court unless it is made reasonably to appear that the ends of justice require it. But the precedent of entertaining and considering such applications has already been established. Since our published Reports contain nothing upon this subject, as far as we are now informed, we have thought it proper to make these observations in this connection, in order that the precedent established may be more generally understood.''

In the case of *Olympia Mining & Milling Co. v. Kerns,* 24 Ida. 481, 135 Pac. 255, the clerk's record shows that this court rendered its judgment on October 7, 1912, sent down its *remittitur* November 5, 1912, recalled the *remittitur* March 27, 1913, and rendered final judgment on September 8, 1913.

In *State v. Bond,* 12 Ida. 424, 86 Pac. 43, the judgment was rendered and the *remittitur* sent down on June 19, 1906, and withdrawn from the lower court on June 22, 1906.

In *Crane v. Morton Realty Co.,* 29 Ida. 63, 157 Pac. 249, the clerk's records show that this court rendered its judgment April 5, 1916, sent down its *remittitur* April 27, 1916, and recalled the *remittitur* May 6, 1916.

In *Tyson Creek R. R. Co. v. Empire Mill Co.,* 31 Ida. 580, 174 Pac. 1004, the *remittitur* was sent down September 18, 1919, and was recalled and filed again in this court on November 10, 1919.

In *Chapman v. Averill Mach. Co.,* 27 Ida. 213, 147 Pac. 785, and 28 Ida. 121, 152 Pac. 593, the case appears from the clerk's record to have been dismissed April 9, 1915, and the *remittitur* was recalled June 30, 1915, and final decision rendered October 25, 1915.

No doubt there are other cases where the *remittitur* has been recalled after this court's mandate has gone down, to which our attention has not been called.

In appellant's briefs upon the original hearing and upon the petition for rehearing it was stated that it was within the province of this court to modify the judgment and reduce

the punishment, and that this should be done if the judgment be not reversed, while in respondent's brief it was suggested that a verdict will not be disturbed on appeal where there is substantial evidence to support it, and that appellant must pay the penalty which the jury saw fit to assess. This question was not briefed or argued by counsel either for the state or appellant, nor was any reference made thereto in the opinion heretofore rendered. This court, upon respondent's suggestion, assumed, although it did not decide, that it had no power to reduce the penalty fixed by the jury. We do not mean to be understood as inferring that fraud or imposition was practiced upon this court by either of the parties connected with the cause, but if the court fell into error, it was by reason of the fact that counsel failed to properly brief and present the question now under consideration.

The questions involved here are of the utmost importance to appellant, and every consideration of justice demands that this court determine its power both to recall the *remittitur* and to reduce the punishment in this case, and that the punishment be reduced if the facts do not warrant the imposition of the death penalty.

While the circumstances of this case do not require the adoption of so broad a rule as is followed in New York or Oklahoma, yet there is ample authority to justify us in holding that this court retains jurisdiction of an appeal, during the term at which a judgment is rendered, where such judgment was inadvertently given, in consequence of a false suggestion, and this may be done without deciding whether C. S., sec. 9091, is an unwarranted attempt upon the part of the legislature to terminate the jurisdiction of this court over cases lawfully before it, and therefore unconstitutional, being in contravention of art. 5, sec. 13, of the constitution.

It necessarily follows that the court has the inherent right, during the term, to recall a *remittitur* or other writ or order issued by it. As is said in *Franklin Bank Note Co. v. Mackey, supra*: "It is technically true that this court

must be repossessed of the *remittitur* before an order made in the cause is effectual, but there is no objection to the return of the *remittitur* following the determination of this court to resume jurisdiction."

See, also, *Henrichsen v. Smith,* 29 Or. 475, 42 Pac. 486, 44 Pac. 496.

There is some contrariety of judicial opinion as to whether an appellate court may reduce a penalty fixed by the jury, under a statute granting such power to the jury (17 C. J., Criminal Law, sec. 3749, pp. 365–367), and it is urged that the jury having exercised its discretionary power to determine that the death penalty should be inflicted, the trial judge had no authority to interfere therewith, and that this court in the exercise of its appellate jurisdiction has no power to review the action of the trial judge as to matters with respect to which he was not clothed with discretionary power.

Prior to 1911, the law provided that every person convicted of murder in the first degree should suffer death. In 1911, the law was amended so as to provide that: "Every person guilty of murder in the first degree shall suffer death or be punished by imprisonment in the state prison for life, *and the jury may decide which punishment shall be inflicted."* (C. S., sec. 8212.)

It is within the power of the legislature to prescribe the penalty for crime, subject only to the constitutional inhibition against cruel and unusual punishments, but where the legislature has prescribed alternative punishments, the decision as to which penalty shall be enforced in an individual case is a judicial act whether made by the court or a jury. As is said in Cooley on Constitutional Limitations, 6th ed., p. 108: "That which distinguishes a judicial from a legislative act is that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be."

Const., art. 5, sec. 9, provides: "The supreme court shall have jurisdiction to review upon appeal any decision of the district courts or the judges thereof."

While C. S., sec. 6446, provides that: "The (supreme) court may reverse, affirm or modify any order or judgment appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. . . . . "

The question is, therefore, whether the judgment appealed from, being based upon the verdict of guilty and the determination by the jury that appellant should suffer the death penalty, is a decision or judgment of the district court within the meaning of Const., art. 5, sec. 9. If it is a decision of the district court, it is subject to review, and to be affirmed, reversed or modified under the provisions of C. S., sec. 6446. We are here concerned not with a question of procedure, but of power, neither of which may be controlled by the legislature. It is conceded that this section is applicable to all cases, civil and criminal, except in a case where the defendant has been found guilty of murder in the first degree and the jury has prescribed the death penalty. (*State v. Harness,* 11 Ida. 122, 80 Pac. 1129; *State v. Neil,* 13 Ida. 539, 90 Pac. 860, 91 Pac. 318; *People v. O'Callaghan,* 2 Ida. 156, 9 Pac. 414.)

Had the jury failed to fix the punishment, under the provisions of C. S., sec. 8212, the judge might have done so, and if, on appeal, this court should become satisfied that the trial judge abused his discretion in fixing the death penalty, it would unhesitatingly modify the judgment to life imprisonment. (*State v. Harness, State v. Neil,* and *People v. O'Callaghan, supra; Pittman v. State,* 84 Ark. 292, 105 S. W. 874; *Warren v. State,* 88 Ark. 322, 114 S. W. 705; *Jones v. State,* 88 Ark. 579, 115 S. W. 166.)

We perceive no logical reason why the judgment of the jury should be more potent than that of the court, and why this court may review the latter but not the former, in so far as it relates to the penalty to be inflicted. Nor why the evidence may be reviewed to determine its suffi-

ciency to support the verdict, but not to determine whether it justifies the infliction of the death penalty. Nor why, in a case where there was error in the record, but not of such a character as to warrant a reversal, in order to avoid the imposition of the extreme penalty when not warranted by the evidence, this court should be put to the alternative of reversing the judgment nevertheless or of permitting injustice to be done. Considerations of both reason and justice uphold the proposition that this court may modify a judgment where the jury has found the defendant guilty of murder in the first degree and fixed the punishment at death, when the furtherance of justice requires such modification.

Conceding that the trial court may not review its own decision, except by way of granting a new trial, it does not necessarily follow that this court is without power to review the decision of the trial court, when that decision is made up under the statute of the verdict of the jury, its determination of the sentence to be imposed, and the judgment based thereon.

This court has power to review any decision of the district courts, and the jury, in a case triable by a jury, is as much a part of the court as the judge. Each has certain legal duties and functions, and the combined action of the jury and the judge makes up and merges in the final judgment. The action of the jury in imposing the death penalty merged in the judgment and became a part of the decision of the court. Const., art. 5, sec. 9, grants to this court power to review such decisions. No limitation of such power is found in the constitution, and if it exists it must be found there. The legislature, being but a co-ordinate branch of the government, is without authority to clothe the jury with the exclusive right to fix the extent of the punishment, this being essentially a judicial act, incorporated in the decision of the court.

The words "judge" and "court" are frequently used as convertible terms, but they are not strictly synonymous, and the judge alone does not necessarily constitute a court, for

while the judge is an indispensable part, he is only a part of the court. In all cases triable by a jury, the court is made up of the judge and the jury. The two combined constitute the court and the decision becomes the decision of the court, and this decision is subject to review.

Our position is borne out by the decisions of the court of criminal appeals of Oklahoma. Secs. 2275 and 6955 of the Oklahoma Statutes are practically identical with our C. S., secs. 8212 and 6446. Sec. 2275 provides: "Every person convicted of murder shall suffer death or imprisonment at hard labor in the state penitentiary for life, at the discretion of the jury. Upon the trial of an indictment for murder, the jury if they find the defendant guilty must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith."

C. S., sec. 8212, provides that "the jury may decide which punishment shall be inflicted." The Oklahoma statute would seem to be mandatory, while our statute is but directory in its terms. Yet the Oklahoma court has repeatedly acted to prevent an abuse of the discretion thus vested in the jury:

In *Chambers v. State*, 16 Okl. Cr. 238, 182 Pac. 714, the court said: "In a capital case, the law of our state in its great humanity allows the jury, after they have first determined the question of guilt, to assess the punishment, which may be death or imprisonment for life at their discretion, and even after the jury say that the defendant should suffer death, this court, in furtherance of justice, has the power to modify the judgment to imprisonment for life."

And in *Fritz v. State*, 8 Okl. Cr. 342, 128 Pac. 170, it was also said: "The power of this court to modify a judgment inflicting the death penalty for murder to imprisonment for life at hard labor, when deemed proper in the furtherance of justice, is in no sense the power of commutation of the sentence of the lower court. Commutation can be granted only by the chief executive of the state, and

is granted as a matter of clemency. The judicial power to modify a judgment and sentence, and the executive power to pardon, parole, or commute, are wholly distinct in their nature. The one is an award of justice, and the other is an act of grace. Commutation is a matter of discretion, and may be refused. Justice is imperative, and must not be denied. The fact that the governor has the power to commute does not abridge the defendant's right to appeal to this court for relief. In other words, the provisions of our criminal procedure act make it the duty of this court to review the record, and in a proper case, if necessary in the furtherance of justice, modify the judgment so as to prevent the imposition of punishment which the evidence will not warrant." (*Williams v. State,* 10 Okl. Cr. 336, 136 Pac. 599; *Jones v. State,* 10 Okl. Cr. 216, 136 Pac. 182, 137 Pac. 121; *Kilgore v. State,* 10 Okl. Cr. 446, 137 Pac. 364; *Owen v. State,* 13 Okl. Cr. 195, 163 Pac. 548; *Robinson v. State,* 13 Okl. Cr. 466, 165 Pac. 616; *Brewer v. State,* 13 Okl. Cr. 514, 165 Pac. 634; *McConnell v. State* (Okl. Cr.), 197 Pac. 521; *United States v. Wynn,* 11 Fed. 57; *Brown v. State,* 34 Ark. 232.)

The right of courts to exist and to function rests upon their power to mete out fundamental justice. While appellant is a foreigner, unable to speak the English language, wholly ignorant of our system of jurisprudence, and without means or friends, yet he is not here asking for clemency or seeking sympathy, but to receive at the hands of this court equal and exact justice. Const., art. 1, sec. 18, admonishes us that courts of justice shall be open to every person, and that right and justice shall be administered, and upon this fundamental principle rests appellant's right to have the *remittitur* recalled and the judgment modified. Causes have frequently found their way into the appellate court, where error had been committed in the trial, not prejudicial error or such as would warrant a reversal of the cause, but which has resulted in the infliction of excessive punishment. When such is made to appear, this court has unhesitatingly, under the provisions of C. S., sec. 9086, modified the judgment,

and in so doing has not exceeded its power under the law of this state.

As was said in *State v. Garcia*, 19 N. M. 414, 421, 143 Pac. 1012, 1014, on rehearing: "There exists in every court . . . . an inherent power to see that a man's fundamental rights are protected in every case. Where a man's fundamental rights have been violated, while he may be precluded under the terms of the statute or rules of appellate procedure from insisting in this court upon relief from the same, this court has the power, in its discretion, to relieve him and to see that injustice is not done. The restrictions of the statute apply to the parties, not to this court. This court, of course, will exercise this discretion very guardedly and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims, nor will we consider the weight of evidence if any substantial evidence was submitted to support the verdict. If substantial justice has been done, parties must have duly taken and preserved exceptions in the lower court to the invasion of their legal right before we will notice them here. But in this case justice has not been done. A man has been convicted and sentenced to imprisonment for a term of years where there is, not only no evidence to support the verdict, but where the evidence conclusively established his innocence. Under such circumstances we cannot permit such an injustice to be done. For a similar case, and a similar holding, see *Sykes v. United States*, 204 Fed. 909, 123 C. C. A. 205."

From a careful examination of the record in this case we are convinced that while the evidence is sufficient to sustain the judgment, it is not sufficient to warrant the extreme penalty of the law. The verdict was based to a great extent upon the testimony of one Garcia, whom appellant charged with the murder. The testimony, actions and statements of this witness, as shown in the record, are of such a character that we have grave misgivings about the infliction of the death penalty. Without reciting in detail all of the facts and circumstances involved in the trial of

this cause, and specifically pointing out errors which were not reversible, but which may have influenced the jury in assessing the extreme penalty, it is clear to our minds that the jury abused its discretion in so doing.

We have, therefore, after very careful consideration, reached the conclusion that it is our duty to recall the *remittitur,* and to modify the judgment to the extent that the sentence to be inflicted be that of life imprisonment at hard labor in lieu of inflicting the death penalty, and the judgment is so modified.

McCarthy, Dunn and Lee, JJ., concur.

Rice, C. J., dissents.