670 P.2d 528

STATE of Idaho, Plaintiff-Respondent,

v.

Robert PYNE, Defendant-Appellant.

No. 14051, 14052.

Supreme Court of Idaho.

Oct. 5, 1983.

Robert I. Fallowfield, Ketchum, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Leslie L. Goddard, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Chief Justice.

On April 7, 1980, the defendant, Robert Pyne, was charged with burglary in the second degree in violation of I.C. §§ 18–1401 and Section 18–1402. On September 5, 1980, Pyne was charged with two counts of felony bail jumping and one count of misdemeanor bail jumping. The misdemeanor charge was dropped and on December 19, 1980, Pyne was found guilty by a jury of two counts of felony bail jumping. On the date of sentencing he pleaded guilty to the burglary charge and the district judge sentenced him to the Idaho State Penitentiary "for a determinate period of five years on each count of bail jumping, and upon the second degree burglary charge. And those sentences shall run concurrently." The defendant appeals from the convictions of felony bail jumping. In addition, the defendant appeals from the

sentence on the second degree burglary conviction in the event that the felony bail jumping convictions are reversed.

■ The amended, amended information[1] filed by the State set forth that the defendant was set at liberty in Blaine County but it did not allege that the crime of bail jumping was committed in that particular county. This Court has previously stated:

> "It is a familiar and well-settled principle of law that the indictment must allege that the offense was committed within the jurisdiction of the court. *State v. Slater,* 71 Idaho 335, 231 P.2d 424; *State v. Webb,* 76 Idaho 162, 279 P.2d 634; *State v. Cole,* 31 Idaho 603, 174 P. 131; 27 Am.Jur., Indictments and Informations, § 64, p. 628, and § 76, p. 639; 21 Am. Jur.2d, Criminal Law, § 398, pp. 415–16; *United States v. Johnson,* 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (Del.1944)."

*State v. Mowrey,* 91 Idaho 693, 695, 429 P.2d 425, 427 (1967). Without allegations that the failures to appear occurred in Blaine County, the Information failed to state facts sufficient to confer jurisdiction upon the district court of Blaine County. *Mowrey, supra.* Therefore, the judgment of conviction as to the two counts of felony bail jumping is reversed and the information is dismissed for want of jurisdiction.

■ Having reversed the felony bail jumping convictions, we must proceed to address the issue of the validity of the sentence on the second degree burglary conviction. The defendant argues that but for the two bail jumping convictions, a five-year determinate sentence for the second degree burglary conviction was an abuse of discretion by the trial court. An appellant has the burden of showing a clear abuse of discretion if the sentence is within the statutory limits. *State v. Olsen,* 103 Idaho 278, 647 P.2d 734 (1982); *State v. Lopez,* 102 Idaho 692, 638 P.2d 889 (1981); *State v. Birrueta,* 101 Idaho 915, 623 P.2d 1292 (1981). I.C. § 18–1403 states that the maximum sentence which may be imposed for second degree burglary is a term of five years.

■ The transcript of the sentencing hearing reveals that the trial judge considered the following in fixing the sentence on the second degree burglary conviction: (1) the presentence report; (2) the defendant's character and criminal history; (3) the facts and conditions surrounding the offense; (4) the appropriateness of probation; (5) society's interest in the case; and, (6) arguments by counsel. We conclude that the defendant has failed to show that there was a clear abuse of discretion by the trial court. We therefore affirm the sentence on the second degree burglary conviction.

Reversed in part, affirmed in part.

BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., dissents without opinion.

BISTLINE, Justice, concurring.

In my view, the Court's opinion does not adequately meet or discuss all the issues

---

1. Counts one and two of the information are as follows:

"COUNT ONE

"That ROBERT PYNE of Ketchum, Idaho, on or about the 8th day of May, 1979, in the City of Hailey, County of Blaine, State of Idaho, then and there being, was then and there set at liberty by court order upon the condition that he would subsequently appear at such specified times and places as the Court should order in the conduct of proceedings against him and that said ROBERT PYNE took flight in order to avoid trial or punishment and did thereby fail to appear at a trial set for his cause and specified to be held on the 23rd day of July, 1980, in violation of I.C. Section 18–7401, a felony.

"COUNT TWO

"That ROBERT PYNE of Ketchum, Idaho, on or about the 7th day of April, 1980, in the City of Hailey, County of Blaine, State of Idaho, then and there being, was then and there set at liberty by court order upon the condition that he would subsequently appear at such specified times and places as the Court should order in the conduct of proceedings against him and that said ROBERT PYNE took flight in order to avoid trial or punishment and did thereby fail to appear at a preliminary hearing set for his cause and specified to be held on the 9th of Jun[e], (sic) 1980, in violation of I.C. Section 18–7401, a felony."

which have been capably addressed by counsel for the parties. I will address the one issue which is of particular importance, leaving to the parties whether they will petition the court for more enlightenment on issues not discussed.

The case presents this Court with its first opportunity to consider the provisions of I.C. § 18–7401 which purports to create a criminal offense for a defendant's failure to appear in a criminal action being processed against him. The statute is of recent origin, and it is surmised that most members of the bench and bar will be surprised to learn of its existence. It reads as follows:

"A person set at liberty by court order, with or without bail, upon condition that he will subsequently appear at a specified time and place, commits a misdemeanor if, without lawful excuse, he fails to appear at that time and place. The offense constitutes a felony where the required appearance was to answer to a charge of felony, or for disposition of any such charge, and the actor took flight or went into hiding to avoid apprehension, trial or punishment. This section does not apply to obligations to appear incident to release under suspended sentence or on probation or parole."

The Court's opinion undertakes no study of the statute, notwithstanding that its terminology and meaning constitute the primary issue on the appeal. Moreover, the Court's view of the statute will be of extreme importance to the members of the bench and bar, including prosecuting attorneys who are by the statute given a rather devastating weapon. The defendant points out that there is nothing in the record which demonstrates that upon his admission to bail an order was entered to the effect that, if he did provide bail and was released, it was on condition that under penalty of law he would for failure to appear at some designated time and place be guilty of a felony. The State's response that there is not in the appeal record a transcript of the preliminary hearing is meaningless. A preliminary hearing is held for a single purpose, and that purpose is not to determine the propriety of admission to bail, or how much the bail will be. What it comes down to here is that the statute appears to have not been complied with, and, even if this defendant knew of the statute, which is much to be doubted,[1] neither he nor any defendant can be charged under it without having specifically agreed to the condition on which they are released, as in the case of probation agreements, or by an order of the court which in unmistakable terms clearly informs the defendant that there is the condition of criminal prosecution attached to the release, and that if the condition is violated, then the violation has been criminalized by the statute. The statute is vicious in and of itself. It is even more so when applied, as appears to be the case here, to unsuspecting defendants who are not forewarned, and in that respect it is only necessary to cite this Court's opinion which struck down the statute criminalizing prostitution. *See State v. Lopez,* 98 Idaho 581, 570 P.2d 259 (1977). This the Court did because men of ordinary reason and intelligence were not forewarned for the exact type of conduct which was against the law—in other words, a statute facially unconstitutional. The bail jumping statute is in the same category, and in this case is for certain unconstitutional as applied, and has all of the requisite indicia and attributes of being facially unconstitutional as well. An unconstitutional statute does not state a public offense. That is the important issue which the Court avoids in favor of the highly technical, but nevertheless applicable grounds that the prosecutor's information did not adequately allege venue.

The defendant also points to the fact that the district court, for the two offenses of bail jumping and the other admitted offense of burglary, imposed three concurrent five-year sentences. He urges that, but for the two bail jumping offenses the district court would not likely have imposed a five-

---

1. It is also doubtful that the district judge was aware of the statute. For certain I was not and no one else with whom I have conversed claims to have known of its enactment. It would be difficult for a district judge to apply a statute of which he was unaware.

year sentence for the pilfering type of burglary to which the defendant entered a guilty plea, the defendant mentioning that the purloined money had been paid back to the victim. There is merit to the defendant's contention, and it bears mention that he does not ask *us* to reduce the burglary sentence, but only that we remand so that the district judge can reimpose sentence on a slate cleaned of the bail jumping convictions. This is a reasonable request, but criminal rule 35 will give the defendant the same opportunity of redress now that the bail jumping convictions have been reversed. I mention now only that if this Court is going to occasionally retain sentence review cases, it should on those occasions engage in the meaningful type of review which our court of appeals undertakes in every instance. This would include requiring of the district judges that they furnish the defendants, in the first instance, and reviewing court in the second instance some statement of reasons and grounds which produced the particular sentence.

Unfortunately, in affirming the maximum five-year determinate sentence handed down by the trial judge, it appears that the Court may once again have returned to its "familiar melancholy path, disposing of one criminal record appeal after another with an incantation of the ritual litany that the sentence imposed is within the maximum limits provided by statute, no abuse of discretion has been shown, and the judgment is affirmed." *State v. Adams,* 99 Idaho 75, 77, 577 P.2d 1123, 1124 (1978) (Bistline, J., dissenting). In falling back into the habit of using cliches to substitute for appellate review, I fear the Court risks a serious retrenchment from the progress brought to appellate review of sentencing in the last few years.

At the time I dissented in *Adams, supra,* I made the unhappy observation that, with regard to the "abuse of discretion" cliche in sentencing review, "discretion" had come to mean "futile appealability" in Idaho. 99 Idaho at 80, 577 P.2d at 1128. However, following the unfortunate decision of this Court in *Adams,* at least two separate decisions—one by this Court and one by the

Court of Appeals—provided ample reason to hope that once again the Court would "acknowledge [its] affirmative duty to make a thorough review of the record, to insist upon reasoned consideration of all relevant factors by the sentencing court, and to modify the sentence imposed whenever such modification is necessary in order to avoid injustice to the individual or to insure the even-handed administration of justice throughout the state." 99 Idaho at 82, 577 P.2d at 1130.

The first case to herald a change in the Court's review of sentencing was *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981). *Osborn* involved a conviction of first degree murder in which the defendant was sentenced to death. The Court found that I.C. § 19–2515(d), which stated that "the Court *shall* set forth in writing any mitigating factors considered," required extensive written and detailed findings relevant to the district judge's sentencing decision. Otherwise, as the Court said, "this court would be forced to make its review on an inadequate record and could not fulfill the function of 'meaningful appellate review' demanded by the decisions of the United States Supreme Court." *Id.* at 414, 631 P.2d at 197. Thus, though clearly limited to capital crimes bringing into play the strictures of I.C. § 19–2515, *Osborn* nonetheless represented a move toward searching and meaningful appellate review of criminal sentencing.

This move was continued in *State v. Tisdale,* 103 Idaho 836, 654 P.2d 1389 (1982). There, the newly created Court of Appeals extended the *Osborn* requirement of written and detailed findings in sentencing to all felony convictions. In *Tisdale,* the Court of Appeals, per Judge Burnett, held that a sentence of imprisonment for a felony (voluntary manslaughter) should be vacated because the district judge gave no reason for his sentencing decision. In reaching its decision, the court stated the following:

"Our role as an appellate court is to see that sentencing discretion is soundly exercised in accord with applicable criteria.

However, where—as in the present case—the court below gives no reason for a sentence, we cannot ascertain whether a term of confinement has been tailored to the purposes for which the court imposed the sentence. Neither can we determine whether the [proper] criteria have been duly considered in fixing the length of the sentence. Finally, where probation is an issue in the case, failure to state the reasons for a sentence leaves the appellate court to speculate whether the legislative criteria established in I.C. § 19-2521 have been followed.

"In short, when a district judge communicates only the length of the sentence, we have nothing to review but the result." 103 Idaho at 837, 654 P.2d at 1390.

Thus, in requiring a written basis for each sentencing decision, the Court of Appeals at last appeared to have created a rational and uniform structure within which it could carry on its appellate duty of review.

However, barely six months after the Court of Appeals handed down *Tisdale,* this Court overruled it in *State v. Osborn,* 104 Idaho 809, 663 P.2d 1111 (1983) (Osborn II). In *Osborn II,* the Court not only held that setting forth reasons for the imposition of a particular sentence was not mandatory, thereby overruling *Tisdale,* but likewise failed to enforce its own earlier mandate in *Osborn I* that the district judge set forth in writing the factors considered in mitigation of sentence. Thus, the Court undid in a single stroke the efforts of both *Osborn I* and *Tisdale* to introduce rationality and uniformity to appellate consideration of sentencing.

In the present case, the record before us contains only comments made by the district judge at the conclusion of the sentencing hearing. It does not contain a statement of the reasons underlying the sentencing decision of the judge. And, as the Court of Appeals held in *Tisdale,* "meaningful appellate review requires such a statement in the record." 103 Idaho at 838, 654 P.2d at 1391. Therefore, without a statement of reasons for the sentencing decision, we have no way of ascertaining what significance, if any, the district judge assigned to the vacated felony convictions in his sentencing decision. Thus, on the possibility that the district judge might not grant a Rule 35 hearing, which I very much doubt, I would remand the case specifically for resentencing in light of our decision to reverse the felony bail jumping convictions.

I concur in the court's judgment but only in its opinion insofar as it reverses the bail jumping conviction for failure to allege venue.